## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MOHAMMED AARABI,

    Petitioner,

v.

WISSAL KERROUM,

    Respondent.

Civil Action No.
1:24-cv-05293-VMC

## OPINION AND ORDER

The Court held a hearing on December 18, 2024 ("Hearing") on Petitioner's request for a preliminary injunction under Federal Rule of Civil Procedure 65 and under 22 U.S.C. § 9004 of the International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq.* (the "Act") and the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention"). Petitioner appeared remotely and by counsel pursuant to the Court's December 13, 2024 Order. (Doc. 15). Respondent did not appear. At the hearing, the Court stated it would grant the request for a preliminary injunction, and this Opinion and Order constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a)(2).

## Background[1]

Petitioner is a dual citizen of Morocco and the United States, having been born in Morocco. (Doc. 1 at 2). He previously worked in Kuwait beginning in 2018. On August 17, 2021, Petitioner and Respondent were married in Morocco. (Pet'r Ex. A, Doc. 1-1).[2] The Parties' son, I.A., was born in September of 2022 in Morocco and is a citizen of Morocco and of the United States. (Doc. 1 at 3).

At the hearing, Petitioner testified that while his wife and child lived with him in Kuwait a short period of time, they were not allowed to reside there permanently and returned to Morocco in 2023. Petitioner testified that he would

---

[1] The Court provides the following background, recognizing that the Act "significantly relaxes the traditional evidentiary requirements." *Castang v. Kim*, No. 1:22-CV-05136-SCJ, 2023 WL 2373611, at *1 n.2 (N.D. Ga. Feb. 2, 2023) (quoting *Rodriguez v. Molina*, No. 422CV00183SMRHCA, 2022 WL 2287805, at *4 n.3 (S.D. Iowa June 24, 2022)); 22 U.S.C. § 9005 ("With respect to any application to the United States Central Authority, or any petition to a court under section 9003 of this title, which seeks relief under the Convention, or any other documents or information included with such application or petition or provided after such submission which relates to the application or petition, as the case may be, no authentication of such application, petition, document, or information shall be required in order for the application, petition, document, or information to be admissible in court.").

[2] Morocco is a party to the Convention. *Morocco Int'l Parental Child Abduction Info.*, U.S. Dep't of State Bureau of Consular Aff., https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/International-Parental-Child-Abduction-Country-Information/Morocco.html [https://perma.cc/2ECS-FDWD].

take vacations to Morocco roughly every six months and would video chat with his son daily. He also provided financial resources to Respondent and I.A.

At some point, the family spent about two weeks in the United States for the purpose of applying for a green card for Respondent. Apart from that time, the family never lived in the United States.

In September 2024, Petitioner was visiting Morocco for I.A.'s birthday. At the time, Respondent was staying with her parents (I.A.'s grandparents), which she did customarily when Petitioner was not in Morocco because Petitioner's brother also lives there. This time, she did not choose to return to the Parties' marital residence when Petitioner returned to visit. On September 17 or 18 of 2024, she took I.A. to the United States without informing Petitioner. Petitioner asked Respondent to return to Morocco with I.A. and Respondent refused. On September 23, 2024, Petitioner filed a Petition with the First Degree Court of Oujda, Morocco for Respondent to return to the matrimonial home with I.A. (Pet'r. Ex. D, Doc. 1-4 at 2). That court issued a summons to both Parties on September 30, 2024 for an October 31, 2024 hearing. (Pet'r. Ex. E, Doc. 1-5). Petitioner attended that hearing, but Respondent did not.

At some point during this process, Petitioner quit his job and moved back to Morocco. In October 2024, he came to the United States to return equipment related to his job, and while he was there, saw I.A. in person for the last time. After

3

that visit, Respondent would not allow Petitioner to video chat with his son. This Petition was filed on November 18, 2024.

On December 2, 2024, Petitioner sent Respondent a message through the WhatsApp application seeking to see I.A. but received no response. The next day he sent Respondent a similar text message and received no response. Petitioner was unable to see I.A. while he was in the United States.

At the Hearing, Petitioner testified that I.A.'s residency was in Morocco. He testified that he never agreed for I.A. to be removed to, or remain in, the United States.

Prior to the Hearing, the Court issued an Ex-Parte Temporary Restraining Order ("TRO," Doc. 5) on November 22, 2024 precluding the Parties from removing I.A. from the Court's jurisdiction and setting a scheduling conference. Petitioner appeared at the scheduling conference, but Respondent did not. The Court then entered an Order on December 4, 2024 extending the TRO and setting the Hearing. (Doc. 9). In the December 4, 2024 Order, the Court provided the following directive to Respondent:

> Respondent is **FURTHER DIRECTED** to appear at the December 18, 2024, at 10:00 A.M., hearing with all passports and other travel documents for I.A. that are in Respondent's possession, custody, or control. Violating this aspect of the Court's Order may result in a finding of contempt, which may include fines or incarceration.

(Doc. 9 at 4). The Court also directed Petitioner to serve a copy of that Order "on Respondent by the most expeditious means reasonably practicable, including email, and file a certificate of such service within 2 business days of making such service." (*Id*.).

The Court appointed a translator under Federal Rule of Civil Procedure 43(d) who translated the Order to Arabic on December 6, 2024. (Doc. 11). Petitioner's counsel served Respondent with the original December 4, 2024 Order on December 4, 2024, and emailed the translated Order to Respondent on December 13, 2024. (*Id*.).

Petitioner engaged a process server who was unable to serve Respondent. (Doc. 13). The Court appointed the United States Marshal Service to attempt service, which has likewise been unsuccessful. (Docs. 9, 10).

## Legal Standard

A district court has broad discretion to grant injunctive relief if the movant shows: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *McDonald's Corp. v. Robertson*, 147 F.3d 1301,1306 (11th Cir. 1998). "In this Circuit, a preliminary injunction is an extraordinary and drastic remedy not to be

granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

## Discussion

### I.    Notice

The Court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a)(1). Petitioner filed a Certificate of Service indicating that on December 4, 2024, Petitioner's counsel emailed Respondent notice of the Hearing. (Doc. 16). Moreover, after the Court had its December 4, 2024 Order translated to Arabic, Petitioner's counsel emailed the translated Order to Respondent as well on December 13, 2024. (*Id.*). At the hearing, Petitioner explained that he was able to log into the email account and see that Respondent had also logged into the email account and had forwarded one of the emails to another person, indicating that she had actual notice of the Hearing.

Moreover, in light of Respondent's apparent evasion of service, the Court finds that emailing her was "notice reasonably calculated, under all the circumstances," to apprise her of the Hearing and provide her an opportunity to present objections. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The Court may therefore proceed to the merits of the preliminary injunction request.

## II.    Likelihood of Success on the Merits

Article 3 of the Convention on the Civil Aspects of International Child

Abduction governs the wrongful removal and retention of children. It states:

> The removal or the retention of a child is to be considered wrongful where:
>
> a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Convention, art. 3. Thus, Petitioner has to prove three elements to establish a prima

facie case of wrongful retention: (1) that I.A. was a habitual resident of Morocco

immediately before his retention in the United States; (2) that Respondent's

retention of I.A. breached Petitioner's custody rights under Moroccan law; and (3)

that Petitioner was exercising his custody rights at the time of retention.

*Berenguela-Alvarado v. Castanos*, 950 F.3d 1352, 1358 (11th Cir. 2020). These elements

must be proved by the preponderance of the evidence. 22 U.S.C. § 9003(e).[3]

---

[3] Article 12 of the Convention provides that if a case under the Convention is commenced more than one year after the retention date, the Court may decline to order the child's return. In the Eleventh Circuit, a retention date is measured from the date the custodial parent informs the non-custodial parent that she will not be returning to the state of habitual residence. *Palencia v. Perez*, 921 F.3d 1333, 1342

First, the Court finds that Petitioner is likely to prevail on his claim that I.A.'s habitual residence immediately prior to retention was Morocco. Neither the Convention nor the Act define "habitual residence." *Monasky v. Taglieri*, 589 U.S. 68, 68 (2020). A minor child's "residence in a particular country can be deemed 'habitual,' however, only when her residence there is more than transitory." *Id*. at 76. "[T]he place where a child is at home, at the time of removal or retention, ranks as the child's habitual residence." *Id*. at 77 (citing *Karkkainen v. Kovalchuk*, 445 F.3d 280, 291 (3d. Cir. 2006)). The Supreme Court has emphasized that a child's habitual residence depends on the totality of the circumstances of the specific case:

> Because locating a child's home is a fact-driven inquiry, courts must be sensitive to the unique circumstances of the case and informed by common sense. For older children capable of acclimating to their surroundings, courts have long recognized, facts indicating acclimatization will be highly relevant. Because children, especially those too young or otherwise unable to acclimate, depend on their parents as caregivers, the intentions and circumstances of caregiving parents are relevant considerations. No single fact, however, is dispositive across all cases. Common sense suggests that some cases will be straightforward: Where a child has lived in one place with her family indefinitely, that place is likely to be her habitual residence. But suppose, for instance, that an infant lived in a country only because a caregiving parent had been coerced into remaining there. Those circumstances should figure in the calculus.

_____

(11th Cir. 2019). The earliest possible date of retention is September 17, 2024, well within the one-year period.

*Id.* at 78 (citations and quotations omitted). I.A. was born in Morocco in 2022 and has lived there primarily since then. (Doc. 1 at 2–3). I.A.'s grandparents and extended family live in Morocco. Parental intent for I.A. to be raised in Morocco can be inferred from the fact that his parents were married there and that Respondent and I.A. resided together there, and Petitioner regularly visited there. In addition, Petitioner testified that he left his job in Kuwait in order to return to Morocco to reside with Respondent and I.A. *Chafin v. Chafin*, 742 F.3d 934, 939 n.9 (11th Cir. 2013) ("Courts recognize that where the situation involves a very young child, the shared intent of the parents in determining the residence of their child is of predominant concern.") (citations omitted). I.A.'s only connections to other countries are remote: he resided only temporarily in Kuwait, and though he received derivative United States citizenship from his father, he only visited there once before being removed from Morocco in September. Accordingly, Petitioner is likely to succeed in demonstrating that I.A.'s habitual residence is Morocco.

Second, Petitioner is likely to succeed on the merits of his claim that retention of I.A. violated the custody laws of Morocco. Retention of a minor child is only wrongful if done in violation of the custody laws of the child's habitual residence. *Monasky v. Taglieri*, 140 S. Ct. 719, 723 (2020). Under Article 14 of the Convention, the Court "may take notice directly of the law of, and of judicial or administrative decisions, formally recognised or not in the State of the habitual

residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable." Petitioner testified that under Moroccan law, both parents have custody of I.A.,[4] and that since October 2024, when Petitioner was in the United States to return his equipment, Respondent has denied Petitioner any access to I.A.

Finally, Petitioner is likely to succeed in showing he was exercising his custodial rights at the time of retention. While he was living in Morocco sporadically, he testified that he remained in continuous contact with I.A. and visited regularly. Moreover, he promptly acted to maintain custody at the time of retention, by filing a Petition with the First Degree Court of Oujda for Respondent to return to the matrimonial home with I.A. (Doc. 1-4 at 2). While this Petition occurred after retention, the speed by which Petitioner acted raises a reasonable inference that he was exercising custody immediately before retention.

Accordingly, the Court finds that Petitioner has established a likelihood of success on the merits.

---

[4] Based on the Court's own research, this appears accurate. Human Rights Educ. Associates, Translation of 2004 Moroccan Family Law (Moudawana), Tit. II, Chap. I, Article 164 ("Custody is the parents' duty as long as the marriage relationship exists."), http://www.hrea.org/wp-content/uploads/2015/02/Moudawana.pdf [https://perma.cc/R5EV-LRTF].

III.    **Remaining Injunctive Relief Factors**

Courts have generally held that the remaining injunctive relief factors are satisfied in a case under the Act and Convention because "[t]he denial of a parent's lawful right to connect with and visit a child constitutes irreparable harm." *Menjivar v. Castro*, No. CV 24-1131 (JWB/DTS), 2024 WL 4516268, at *4 (D. Minn. May 8, 2024) (quoting *Rodriguez v. Molina*, 608 F. Supp. 3d 791, 797 (S.D. Iowa 2022), and noting that "prohibit[ing] Respondent[] from removing the child from this jurisdiction until a hearing on the merits can take place . . . would cause little harm to Respondents" and "[t]he public has an interest in maintaining the well-being of children."); *see also* 22 U.S.C. § 9001(a) ("The international abduction or wrongful retention of children is harmful to their well-being . . . [p]ersons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention."). The Court agrees, and based on the record before it, finds that Petitioner has satisfied the remaining injunctive relief factors.

IV.    **Show Cause Order**

The Court noted at the hearing that Respondent is likely in contempt of its Order to surrender I.A.'s travel documents. The Court will order Respondent to show cause by separate order.

## Conclusion

For the above reasons, it is **ORDERED** that the Court's Temporary Restraining Order (Doc. 5) is converted into a preliminary injunction and for the duration of this proceeding, it is therefore

**ORDERED** that Petitioner and Respondent are **PROHIBITED** from removing I.A., or causing I.A.to be removed from the jurisdiction[5] of this Court pending a determination on the merits of the Petition. Additionally, no person acting in concert or participating with any party shall take any action to remove I.A. from the jurisdiction of the Court pending a determination of the same. **Violating this aspect of the Court's Order may result in a finding of contempt, which may include fines or incarceration.**

---

[5] The Northern District of Georgia comprises four divisions, each of which is within the Court's jurisdiction:

(1) The Gainesville Division comprises the counties of Banks, Barrow, Dawson, Fannin, Forsyth, Gilmer, Habersham, Hall, Jackson, Lumpkin, Pickens, Rabun, Stephens, Towns, Union, and White.

(2) The Atlanta Division comprises the counties of Cherokee, Clayton, Cobb, De Kalb, Douglas, Fulton, Gwinnett, Henry, Newton, and Rockdale.

(3) The Rome Division comprises the counties of Bartow, Catoosa, Chattooga, Dade, Floyd, Gordon, Murray, Paulding, Polk, Walker, and Whitfield.

(4) The Newnan Division comprises the counties of Carroll, Coweta, Fayette, Haralson, Heard, Meriwether, Pike, Spalding, and Troup.

Upon service of process on Respondent, the Court will set a final hearing under 22 U.S.C. § 9003(d).

**SO ORDERED** this 20th day of December, 2024.

Victoria Marie Calvert
United States District Judge